RECEIVED
IN ALEXANDRIA, LA.

MAR 2 9 2010

TONY R. MOORE, CLERK
BY _____
         DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

DAVID GLEN THOMAS                      CIVIL ACTION NO. 08-1066

VERSUS                                          JUDGE TRIMBLE

THE CITY OF BASTROP                  MAGISTRATE JUDGE HAYES

## MEMORANDUM RULING

Before the court is a motion for summary judgment by defendant,[1] City of Bastrop

("Bastrop"), as well as a cross-motion for partial summary judgment filed by plaintiff,[2] David Glen

Thomas ("Thomas").  For the reasons expressed below, the court finds that defendant's motion

should be GRANTED and plaintiff's motion should be DENIED.

I.      BACKGROUND

        This suit stems from a harrowing and tragic gunfight between members of the Bastrop Police

Department ("BPD") and Dennis Clem ("Clem"), after two (2) BPD officers attempted to serve an

arrest warrant on Clem.  Plaintiff was employed as the operations manager at Med Life EMS, Inc.

("Med Life"), a provider of emergency medical services in Bastrop, Louisiana.[3]  While working at

Med Life on August 10, 2007, plaintiff heard dispatch report someone laying on the side of the road

---

[1]R. 29.

[2]R. 39.

[3]Deposition of Thomas [R. 29-3] at 9:1-3.

1

across from City Hall.[4]  After confirming to the Sheriff's Office that a Med Life ambulance was responding to the call, plaintiff decided to assist the ambulance and traveled to the victim's location in his non-ambulance company vehicle.[5]  While traveling to the scene, plaintiff learned via radio dispatch that there was possibly another victim lying in the parking lot of the Budget Inn Motel ("Budget Inn").[6]

Upon arriving at the Budget Inn, plaintiff observed Officer Josh Hawthorne of the BPD, crouched behind a vehicle with his weapon drawn. Officer Hawthorne instructed plaintiff repeatedly to "stay down" and "come on up" to his location.[7]  Plaintiff armed himself with his personal firearm and proceeded toward Officer Hawthorne.[8]  Once he reached Officer Hawthorne, plaintiff was informed that the two victims were BPD Officers and the injured officer in the Budget Inn parking lot was BPD Officer John Smith.[9]

Video taken by a premises security camera at Budget Inn indicates that Captain Sherman Burrell, another BPD officer, was standing over Officer Smith with his weapon drawn and began yelling at plaintiff to "come on" and that he had them "covered," ostensibly to speed the arrival of

---

[4]Id. at 12:2-13.

[5]Id. at 13:8-14:15.

[6]Id. at 14:17-15:11.

[7]Id. at 16:13-23.

[8]Id. at 30:19, 31:16-23, 32:1-8.

[9]Id. at 17:9-15.  The second injured officer is simply referred to as "Chuck" throughout the briefs and deposition testimony.

plaintiff and other paramedic help to his injured colleague.[10]  Plaintiff asserts that, at this point, he assumed the shooter was hiding in a second floor motel room overlooking the parking lot.[11]

Plaintiff and his employee, Steve Williams ("Williams"), were escorted deeper into the crime scene by Officer Hawthorne and approached Officer Smith and began to examine him in preparation for putting him on a backboard and transporting him away from the scene for medical treatment. The video reveals that, while plaintiff and Williams were engaged in this effort, BPD officers in defensive positions near Officer Smith, including Captain Burrell, yelled at the barricaded shooter, Clem, to "come out with [his] hands up."[12]  Clem exited the motel room, a pistol in each hand, and began shooting to his left and right.  BPD officers returned fire.

The video shows that, upon hearing shots fired, plaintiff retreated to a corner located behind him while, unbeknownst to plaintiff, Clem was advancing to the same location.  Plaintiff was shot in the arm during this gunfight and was shortly thereafter escorted from the scene and driven to the hospital for treatment of his injury.[13]  Clem was fatally wounded and died at the scene.

While plaintiff initially believed that he was shot by Clem,[14] plaintiff's complaint asserts that

---

[10]Video transferred to DVD format and attached as Exhibit 5 to plaintiff's motion [R. 29-8].

[11]Deposition of Thomas [R. 29-3] at 21:11-24.

[12]Video footage; Deposition of Thomas at 20:11-13. Dennis Clem became barricaded in the Budget Inn after Officer Smith and his partner attempted to serve a warrant on him. The video shows that the officers entered the motel room and, after a few minutes, Clem began shooting, causing the officers to flee the room. As they retreated, they were shot. Officer Smith reached the sidewalk to the right of the motel room before collapsing, while his partner fled to the left near City Hall, where he was found by a second EMS team.

[13]Id. at 30:19-23.

[14]Id. at 28:20 - 30:9.

he was struck by a bullet fired by Captain Burrell as he ran from the gunfight, firing his weapon "blindly" over his shoulder, or by some other BPD officer.[15]  Plaintiff's briefs in conjunction with these pending motions admit that he does not know who shot him.[16]

Plaintiff filed the above captioned suit, alleging that he was unlawfully "seized" in violation of the Fourth Amendment to the United States Constitution when he was told to render aid to Officer Smith and escorted to Officer Smith by Officer Hawthorne on the orders of Captain Burrell.  Plaintiff further alleges that his right to due process of law under the Fourteenth Amendment to the United States Constitution was violated when he was subjected to serious bodily injury and/or death without regard for his safety when Captain Burrell ran from the scene, firing his weapon over his shoulder.  Plaintiff brings these claims against Bastrop under 42 U.S.C. § 1983 and alleges similar violations of his rights under Article I, Sections 2 and 5 of the Louisiana State Constitution.  Additionally plaintiff alleges negligence under Louisiana tort law.  Bridgefield Casualty Insurance Company, Inc. intervened in this suit to recover workers' compensation benefits which have and are continuing to be paid to plaintiff.[17]  Bridgefield does not join in plaintiff's motion for partial summary judgment and has not filed an opposition to defendant's motion.

We consider the motions filed by both parties below.

## II.    APPLICABLE STANDARD

Summary judgment is mandated when the

> pleadings, the discovery and disclosure materials on file, and any

---

[15]Complaint [R. 1] at ¶ 16.

[16]See, for example, Plaintiff's memo. in opp. to defendant's MSJ [R. 33-1] at p. 3.

[17]R. 13.

affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.[18]

In reviewing such evidence, the court will draw all justifiable inferences in favor of the non-moving party.[19] An issue of fact is "genuine" when its resolution determines the non-moving party's entitlement to relief.[20]

Once the movant has demonstrated "an absence of evidence to support the non-moving party's case," the burden shifts to the non-moving party to come forward with specific facts showing a genuine issue of fact for trial.[21] Conclusory allegations and denials, speculation, improbable references, unsubstantiated assertions and legalistic argumentation are not an adequate substitute for specific facts showing that there is a genuine issue of fact necessitating trial.[22] The court will not assume that the non-moving party will meet its burden in the future, as such party is obligated to respond affirmatively to a motion for summary judgment and may not rest upon the pleadings without specific factual allegations in support of these claims.[23]

Although the movant must demonstrate a lack of evidence as to one or more necessary elements of the non-moving party's case, it is not necessary that the movant negate the elements of

---

[18]Fed. R. Civ. P. 56(c)(2); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

[19]Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

[20]Anderson, 477 U.S. at 248.

[21]Celotex, 477 U.S. at 325; Matsushida Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

[22]SEC v. Recile, 10 F.3d 1093, `097 (5th Cir. 1993).

[23]Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citing Lujan v. National Wildlife Federation, 497 U.S. 871, 888 (1990)).

5

the non-moving party's case.[24]  If the movant fails to meet this initial burden, the motion must be

denied, regardless of the non-moving party's response.[25]

## III.   ANALYSIS

### A.   Plaintiff's Unlawful Seizure Claims

The Fourth Amendment to the U.S. Constitution and Article 1, Section 5 of the Louisiana

Constitution protect citizens against, inter alia, unreasonable searches and seizures.  This protection

applies not only to belongings, but also to searches and seizures of the person.[26]

Plaintiff's complaint alleges that he was seized within the meaning of the Fourth Amendment

when Captain Burrell ordered Officer Hawthorne to escort plaintiff deeper into the crime scene to

render medical aid to Officer Smith.[27]  Plaintiff alleges that Captain Burrell's shouts to "come on"

and that he would "cover" plaintiff, combined with his order to Officer Hawthorne to escort plaintiff

to Officer Smith constituted a show of authority sufficient to effect a Fourth Amendment seizure.[28]

In U.S. v. Mendenhall,[29] the United States Supreme Court considered whether or not a

criminal defendant, charged with possession of heroin with intent to distribute, was subjected to an

unlawful seizure under the Fourth Amendment when she was approached by federal narcotics agents

---

[24]Id., citing Celotex, 477 U.S. at 323 and Lujan, 497 U.S. at 885-86.

[25]Id.

[26]California v. Hodari D., 499 U.S. 621 (1991) (citing Henry v. U.S., 361 U.S. 98 (1959));
State v. Belton, 441 So.2d 1195 (La. 1983).

[27]Complaint [R. 1] at ¶ 15; Memo. in opp. to defendant's mtn. [R. 33-1] at pp. 4-6.

[28]Id.

[29]446 U.S. 544 (1980).

and subsequently handed over two small packages of heroin hidden in her undergarments. The court, relying on its prior analyses in cases such as Terry v. Ohio,[30] concluded that

> a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.[31]

The court found that, because the defendant was asked to provide identification, accompany the agents to the DEA airport office and to consent to a search of her person, and not commanded to do so, there was no seizure of her person within the meaning of the Fourth Amendment.[32] The court rejected the argument that defendant must have been seized by the agents' show of authority because her eventual decision to hand over the heroin in her possession was an act against her own interests. The court instructed that whether or not defendant acted in her own self-interest was not determinative and that the proper inquiry is whether or not her compliance with the agents' requests was voluntary.[33]

In California v. Hodari D., the Court again considered whether or not a show of authority by law enforcement resulted in a Fourth Amendment seizure. Hodari, a juvenile pursued on foot by police after being observed huddled around a car in a suspicious manner, threw down a rock of crack cocaine as he ran from police. Hodari was immediately thereafter tackled by police and placed under arrest. He was found to be in possession of $130 cash and a pager. The Court granted certiorari in

---

[30]392 U.S. 1 (1968).

[31]Mendenhall, 446 U.S. at 554.

[32]Id. at 559.

[33]Id.

order to address the question of whether or not, at the time he disposed of the drugs, Hodari had been seized within the meaning of the Fourth Amendment.

The Court, recalling Brower v. Inyo County[34] and Hester v. United States,[35] reasoned that a Fourth Amendment seizure may result from a show of authority, but only when that show of authority fulfills the Mendenhall test, objectively apprising a reasonable person that their liberty has been restrained, and also results in the actual submission of the person to that authority[36]. Applying this reasoning to the facts of the case before it, the Court concluded that Hodari had not submitted to the show of authority by police at the time he dropped the cocaine and, therefore, no unlawful seizure occurred which would have tainted the drug evidence, requiring its suppression at trial.[37]

More recently, in Brendlin v. California,[38] the Court considered whether or not a passenger was seized within the meaning of the Fourth Amendment when the driver of the vehicle was stopped by police. Having already concluded in Delaware v. Prouse[39] that a driver is seized under the Fourth Amendment when subject to a traffic stop, the Court ruled that no legally significant distinction could be made between driver and passenger for purposes of the Fourth Amendment issue. Recalling Florida v. Bostick,[40] the court reminded that, when the person alleging seizure has no

---

[34] 489 U.S. 593 (1989).

[35] 265 U.S. 57 (1924).

[36] Hodari, 499 U.S. at 628.

[37] Id. at 628-29.

[38] 551 U.S. 249 (2007).

[39] 440 U.S. 648 (1979).

[40] 501 U.S. 429 (1991).

desire to leave the scene for reasons independent of police presence, then the appropriate inquiry is whether "a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter."[41]

Plaintiff's deposition testimony demonstrates that he acted voluntarily when he responded to the emergency call and entered the scene. When asked whether or not he felt, at any time, he was not free to leave the scene of the crime, plaintiff replied, "I felt like if had I left /sic/ the scene that – then I would be responsible."[42] When asked to elaborate on what he would have been responsible for, plaintiff replied, "[f]or possibility /sic/ that well had you left that's what caused John and – you know, to die...[w]e had you covered and you chose not to come in."[43] Plaintiff further testified that he was never threatened in any way with consequences if he chose not to render aid.[44] Finally, plaintiff testified somewhat evasively, that he "did not deny" that, in instances where he, as an emergency medical services provider, perceived a situation to be dangerous, he had the authority to refuse to enter a scene to render aid.[45] This is confirmed by the deposition testimony of Steve Williams, plaintiff's employee at Med-Life, which states that the ranking EMS employee at the scene makes the determination as to whether or not it's safe to enter the scene.[46] Alan Freeman, Bastrop Chief of Police at the time of the incident, also testified that police do not have the authority to

---

[41]Brendlin, 551 U.S. at 255 (quoting Bostick, 501 U.S. 435-36).

[42]Deposition of Thomas [R. 29-4] at 49:25 - 50:3.

[43]Id. at 50:4-7.

[44]Id. at 50:19-25.

[45]Id. at 52:6-9.

[46]Deposition of Williams [R. 29-9 ] at 9:11-21; 10:25 - 11:2; 11:6-16.

"order" EMS personnel into a scene because EMS personnel do not work for the police department.[47]

Plaintiff argues that by accepting Captain Burrell's word that the scene was secure, he fulfilled whatever obligation he may have had to assess the safety of the scene before entering to render aid and, thus, was obeying an order from Captain Burrell at that point.[48]  Section XIII of the Med Life Standard Operations Procedure Manual ("SOP") provides that, as an employee of Med Life, plaintiff was required to

> b.   [o]bey any and all instructions from the Communications Center or Police Department. **WAIT UNTIL THE SCENE IS SAFE AND SECURED BY THE POLICE DEPARTMENT BEFORE ENTERING.**

> c.   After assurances that the **SCENE IS SAFE TO ENTER,** the crew should take command of only the medical aspects of the scene.

> d.   Obey all instructions of the law enforcement officers on the scene not pertaining to patient care.[49]

Our review of the evidence before us leads us to conclude that plaintiff's behavior, admissions and testimony demonstrate that he was not under the impression, by virtue of Officer Burrell's assurance that he would be "covered," that the scene was safe and secure.  Recalling the facts, plaintiff was aware that as many as two victims were shot and, upon arriving at the scene, became aware that the shooter was still on the premises and mistakenly assumed that the shooter was hiding in a second floor motel room.  Neither party disputes and the video demonstrates that the officers on the scene had weapons drawn and were in defensive positions.  Plaintiff armed himself

---

[47]Deposition of Freeman [R. 29-7] at 14:1-5.

[48]Memo. in opp. to defendant's mtn. for summ. jmt. [R. 33-1] at pp. 5-6.

[49]R. 29-5 at p. 22 (emphasis original).

with his personal firearm[50] and took up a similarly defensive position and did not advance toward the wounded officer immediately.  These facts, when viewed together, demonstrate that the scene was not safe and secure and, further, that plaintiff was keenly aware of the danger.

The court does not doubt that, as argued by plaintiff, Officer Burrell's assurance that he would "cover" him factored into his decision to render aid, but given the obvious evidence of danger of which plaintiff was aware,[51] Captain Burrell's assurance did not amount to an assurance that the scene was safe and secure, if for no other reason than the suspect was still armed and unrestrained.  The SOP quoted above plainly places plaintiff's safety above other concerns and requires plaintiff to be sure of safety before entering, especially when the danger is obvious to him.  Again, under the facts of this case, no genuine issue of fact remains as to plaintiff's awareness of the danger present at the scene.

Plaintiff's testimony admits that he did not believe his liberty was restrained or that he could not leave the scene or refuse to render aid.  Plaintiff's testimony, instead, evidences that he was

---

[50]Deposition of Thomas [R. 29-3] at 31:15 - 33:24.  The court notes that plaintiff is an elected Constable and testified that he carries a pistol in his vehicle for protection during the course of his duties serving papers in that elected position.  The court also notes, however, that plaintiff admits he possesses no concealed weapons permit, but often carries the pistol on his person, stuck in the back waistband of his pants.  See, generally, R. 29-3 pp. 31 - 36.

[51]Deposition of Thomas [R. 29-4] at 20:15 - 18, which reads:

> ...I looked up at Sherman Burrell and I said don't let him
> come out of that room and he was saying we got you – I got
> you covered, I got you covered, you know...

The court finds this testimony to be an admission that plaintiff understood the danger presented by the situation before him, as it demonstrates that the prospect of the suspect coming out of the room where he was hiding would be dangerous to plaintiff and he sought to avoid it.

11

subject to the authority of his own conscience, over and above the police influence.  Thus, as a matter of law, plaintiff does not allege a seizure under the Fourth Amendment.  As determined in Mendenhall and Bostick, it does not matter that plaintiff acted against his own self-interest and, as a person whose conscience compelled him to render aid, his voluntary act was not the result of police presence.  While plaintiff's allegations do not rise to the level of a Fourth Amendment seizure, we do find they are more likely in the vein of Louisiana negligence claims, which we will address below.

We also conclude that plaintiff's claim under Article 1, Section 5 of the Louisiana Constitution fail for the reasons cited above.  Although the Louisiana Constitution provides increased protection from even "imminent seizures,"[52] plaintiff's own testimony again evidences that he did not feel restrained in his liberty to leave the scene by any authority other than his own conscience.

Given our findings above, we conclude that the evidence, when viewed in the light most favorable to plaintiff as the non-moving party, does not demonstrate the existence of any genuine issue of material fact which, if decided in plaintiff's favor, would entitle him to relief for violation of his Fourth Amendment rights under 42 U.S.C. § 1983.

**B.    Plaintiff's Due Process Claims**

The Fourteenth Amendment to the U.S. Constitution and Article 1, Section 2 of the Louisiana

---

[52]State v. Tucker, 626 So.2d 707 (La. 1993) (adopting the U.S. Supreme Court's Hodari D. analysis of what constitutes an actual seizure, but adding that the Louisiana Constitution provides for protection against "imminent seizure," which occurs when the police "come upon an individual with such force that, regardless of the individual's attempts to flee or elude the encounter, an actual stop of the individual is virtually certain").

Constitution protect citizens against, inter alia, deprivation of life, liberty or property without due process of law. Plaintiff's complaint alleges that Captain Burrell, while running from the gunfight, shot blindly over his shoulder and that either Burrell or another police officer shot the bullet that injured plaintiff in conscious disregard of substantial risk of harm to innocent parties.[53] Plaintiff's opposition to Bastrop's motion also alleges that Captain Burrell's order to plaintiff to enter the crime scene before it was secure and the BPD's insistence on drawing Clem out of hiding while plaintiff attempted to render aid to Officer Smith subjected plaintiff to mortal danger without opportunity for refusal.[54]

Defendants move for summary judgment as to these claims on the basis that plaintiff has failed to offer any evidence in support of these conclusory allegations. Plaintiff's response to this portion of defendants' motion merely restates the substance of these allegations, offering no facts in support thereof.[55]  Moreover, plaintiff's own deposition testimony and briefs admit that he has no proof of who shot him.[56]  We reject plaintiff's proffered reasoning that, because of the large number of police officers and the presence of just one suspect at the scene, it is more likely than not that he was shot by a police officer. This reasoning is conclusory and forgets the potential impact of spatial relationships and trajectory and plaintiff offers no expert testimony to support his conclusion. The court's review of the video evidence similarly offers no indication of who shot plaintiff.

---

[53]Complaint [R. 1] at ¶ 16.

[54]R. 33-1 at p. 7.

[55]Id.

[56]Deposition of Thomas [R. 29-3] at 30:9 - 14; R. 33-1 at p. 3.

As discussed above, we also reject plaintiff's assertion that he was not free to object to Captain Burrell's request for aid to Officer Smith based on plaintiff's own testimony and the text of the MedLife SOP. Moreover, it is incumbent upon a party met with a motion for summary judgment to come forward with all available evidence in support of its claim(s).[57] Although plaintiff possesses bullet fragments removed from his arm and could have had them tested to ascertain whether or not the bullet that hit him was fired from a police weapon, plaintiff offers no such evidence.[58] Plaintiff has plainly failed to meet his burden of proof as to these allegations.

Given our findings above with respect to plaintiff's decision-making ability and plaintiff's failure to respond with evidence in support of his allegations that he was shot by a BPD officer, defendant's motion for summary judgment as to plaintiff's Fourteenth Amendment claim must be granted. For the reasons cited above, we also find that defendant's motion should be granted as to plaintiff's due process claim under Louisiana Constitution Article 1, Section 2.

Finally, as above, plaintiff's claim that defendant acted negligently in attempting to lure Clem out of his hiding place while plaintiff and his colleague attempted to render aid to Officer Smith is an allegation of negligence under Louisiana law and does not rise to the level of a state or federal constitutional violation.

### C.    Municipal Liability Under 42 U.S.C. § 1983

42 U.S.C. § 1983 provides, in part, that

>      every person who, under color of any statute, ordinance, regulation,
>      custom, or usage, of any State or Territory or the District of

---

[57]Paul Kadair, Inc. v. Sony Corp. of America, 694 F.2d 1017, 1027 (5th Cir. 1983) (internal citations omitted).

[58]Deposition of Thomas [R. 29-4] at 28:9 - 24.

14

Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law...[.]

While a municipality may be liable under § 1983, such liability may not be predicated upon the theory of <u>respondeat superior</u>.[59]   Municipal liability must be proven, instead, by the demonstration of three elements: (1) a policymaker; (2) an official policy or custom; and (3) a violation of constitutional rights whose "moving force" is the policy or custom.[60]

Defendant asserts that plaintiff's federal unlawful seizure and due process claims should be dismissed because plaintiff has failed to demonstrate that Bastrop maintained a policy or custom which violated plaintiff's constitutional rights.  Defendant points out that plaintiff's claim is predicated upon the singular incident giving rise to his claims and, under applicable jurisprudence, a claim for municipal liability based on failure to properly train based on a single incident fails as a matter of law.[61]

Plaintiff alleges that it was the policy or custom of Bastrop not to provide its police officers with sufficient training for situations such as occurred on the day he was shot.  More specifically, plaintiff asserts that the POST[62] training which all BPD officers receive is inadequate under federal law, vaguely citing the National Incident Management System ("NIMS") information available on

---

[59]<u>Monell v. Department of Social Services of City of New York</u>, 436 U.S. 658, 691 (1978).

[60]<u>Piotrowski v. City of Houston</u>, 237 F.3d 567, 578 (5th Cir. 2001) (citing <u>Monell</u>, 436 U.S. at 694).

[61]R. 42 at pp. 4-7.

[62]"POST" means "Police Officer Standards of Training" and requires that the officer attend and pass all basic police academy classes.  Deposition of Downey Black [R. 29-10] at p. 2.

15

the website of the Federal Emergency Management Agency ("FEMA").[63]  Plaintiff argues, without

citing specific authority, that BPD officers were required to undergo NIMS or other unspecified

training in order to "receive federal funding for their city or department."[64]  Plaintiff cites Rodriguez

v. Avita[65] and claims that, in this case, as in Rodriguez, defendants maintained insufficient training

which amounts to a custom and is actionable under § 1983.

Defendant refutes this argument, citing Huong v. City of Port Aurthur[66] as authority that

plaintiff's failure to train claim must fail because BPD complied with the training requirements of

the State of Louisiana under La. R.S. 40:2405.[67]

To prevail on a failure to train claim, plaintiff must show that

> (1)     the training or hiring procedures of the municipality's
>          policymaker were inadequate,
> (2)     the municipality's policymaker was deliberately indifferent
>          in adopting the hiring or training policy, and
> (3)     the inadequate hiring or training policy directly caused
>          plaintiff's injury.[68]

In Languirand v. Hayden,[69] the Fifth Circuit held that municipal liability under § 1983 based

on insufficient police training was only possible when plaintiff demonstrates that the failure to train

---

[63]R. 33-1 at p. 8, citing www.fema.gov/emergency/NIMS.

[64]Id. at pp. 8-9.

[65]871 F.2d 552 (5th Cir. 1989).

[66]961 F. Supp. 1003 (E.D. Tex. 1997) (citing Conner v. Travis County, 209 F.3d 794, 798
(5th Cir. 2000)).

[67]R. 29-2 at p. 5.

[68]Baker v. Putnal, 75 F.3d 190, 200 (5th Cir. 1996).

[69]717 F.2d 220, 227 (5th Cir. 1983).

16

was the result of "gross negligence amounting to a conscious indifference" by the municipality. The

court required a showing of      .

> at least a pattern of similar incidents in which citizens were
> injured or endangered by intentional or negligent police
> misconduct and/or that serious incompetence or misbehavior
> was general or wide-spread throughout the police force.[70]

Plaintiff fails to demonstrate many, if not all of the required elements of municipal liability

in this case.  Although plaintiff alludes to a requirement that BPD maintain NIMS training, no

statutory authority or other specific facts are pled which support that allegation.  Moreover, we agree

with defendant that plaintiff has failed to demonstrate that the POST training maintained by BPD

is insufficient.  In Huong, the Fifth Circuit, citing Brown v. Bryan Co.,[71] relayed that a municipality

prevails on a failure to train claim when it can demonstrate that it complied with state-mandated

training standards for its officers.[72]  Plaintiff's stark allegations concerning NIMS are insufficient

to meet his burden of proof under the summary judgment standard.

In order to demonstrate deliberate indifference, plaintiff must show that "'in light of the

duties assigned to specific officers or employees, the need for more or different training is obvious

and the inadequacy so likely to result in violations of constitutional rights, that the policymakers of

the city can reasonably be said to have been deliberately indifferent to the need.'"[73]  Moreover, while

---

[70]Id.; Oklahoma City v. Tuttle, 471 U.S. 808 (1985); City of Canton v. Harris, 489 U.S. 378 (1989).

[71]53 F.3d 1410, 1424-25 (5th Cir. 1995).

[72]Huong, 961 F.Supp. at 1007.

[73]Sanders-Burns v. City of Plano, 594 F.3d 366, 381 (5th Cir. 2010) (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 390 (1989).

17

it is possible to show deliberate indifference on the basis of a single incident, such a showing is difficult and plaintiff is generally required to demonstrate a pattern. In the absence of a pattern of violations, plaintiff must demonstrate that "'the highly predictable consequence of failure to train would result in the specific injury suffered, and that the failure to train represented the moving force behind the constitutional violation.'"[74]

Plaintiff fails to allege facts which support his municipal liability claims. Plaintiff shows no obvious inadequacy and no deliberate indifference thereto. Plaintiff further shows no pattern of constitutional violations, basing his failure to train claim upon a single incident. Alternatively, plaintiff also fails to show that his alleged constitutional deprivations were a "highly predictable consequence" of the claimed failure to train. Finally, plaintiff fails to demonstrate that, his injuries were caused by the supposed failure to train, offering no proof of causation other than his opinion that he was shot by a police officer and that the injury would not have happened if the police would not have ordered Clem to come out with his hands up.

Plaintiff's reliance on Rodriguez is misplaced. In that case, the Fifth Circuit found that Rodriguez's claim, the text of which instant plaintiff mistakenly cites as substantive ruling, was insufficient in that it merely described a single incident.[75] Thus, Rodriguez actually supports defendant's motion, rather than plaintiff's opposition.

Based on these findings, plaintiff has failed to offer evidence which would support a reasonable fact finder's determination in favor of municipal liability for either of plaintiff's claims

---

[74] Id. citing Davis v. City of N. Richland Hills, 406 F.3d 375, 386 (5th Cir. 2005) (quoting Brown v. Bryan County, 219 F.3d 450, 462 (5th Cir. 2000)).

[75] Rodriguez, 871 F.2d at 555.

18

under 42 U.S.C. § 1983. Plaintiff names no defendant other than Bastrop, requiring dismissal of his federal unlawful seizure and due process claims. This failure to demonstrate municipal liability is, as explained above, not the only reason for dismissal of these claims.

### D.   Louisiana Law Negligence Claims

Plaintiff's complaint alleges that defendant is liable under Louisiana tort law for

| | |
|---|---|
| 1. | failure to properly secure and control the crime scene |
| 2. | failure to prevent civilians from participating in the crime scene |
| 3. | failure to properly train police officers to monitor and administrate over a crime scene of this type |
| 4. | failure to take the necessary steps in order to protect the interest of the public |
| 5. | failure to take precautions necessary to avoid Mr. Thomas from being shot |
| 6. | otherwise failing to use due care and caution commensurate with the circumstances then and there existing |
| 7. | any and all other actions of negligence proven in trial on the merits.[76] |

Defendant argues that, though stated as seven (7) separate claims, plaintiff really only makes two (2) substantive allegations of negligence: (1) failure to secure and control the crime scene and (2) failure to adequately train its police officers.[77] The court agrees and will examine the claims accordingly. Defendant also argues that summary judgment is appropriate as to these claims under the professional rescuer doctrine, which prohibits tort recovery by a professional rescuer injured while responding to an emergency.[78]

---

[76]R. 1 at ¶ 17.

[77]R. 29-2 at p. 9.

[78]Id. at pp. 11-13.

19

Plaintiff filed a motion for partial summary judgment relating only to his Louisiana law negligence claims.[79]  Plaintiff's motion asserts that only questions of law remain concerning these negligence claims, as the parties "generally agree as to the facts" which form the basis of same.[80] The court disagrees, noting that whether or not a breach occurred is a question of fact.  However, as we discuss below, we do not find that a trial on the merits will aid the court in its ability to draw inferences and conclusions.[81]  Instead, we find that the parties have produced likely all the evidence which they might present to the court at the scheduled bench trial of this matter and that, accordingly, summary judgment is an appropriate remedy at this stage.[82]

Under Louisiana law,

> [e]very act whatever of man that causes damage
> to another obliges him by whose fault it happened
> to repair it.[83]

Masters and employers are also responsible under the theory of <u>respondeat superior</u> for damage caused by their servants and overseers in the course and scope of their employment when the master or employer might have prevented the act which caused the damage, but did not do so.[84]

---

[79]R. 39.

[80]Id. at p. 5.

[81]Matter of Placid Oil Co., 932 F.2d 394, 398 (5th Cir. 1991) (quoting Nunez v. Superior Oil Co., 572 F.2d 1119, 1124 (5th Cir. 1978)).

[82]The court notes that this case was filed in July of 2008, giving the parties every benefit of discovery.  The parties do not allege that discovery has been inadequate in this case and do not point to evidence which, if allowed to proceed to a bench trial on May 3, 2010 before the undersigned, they would produce in support of or opposition to plaintiff's claims.

[83]La. Civ. C. Art. 2315.

[84]La. Civ. C. Art. 2320.

20

In order for Bastrop, the sole defendant named by plaintiff, to be liable under the theory of respondeat superior, liability must first be found on the part of the BPD officers on the scene. Plaintiff levels the vast majority of his accusations against Captain Burrell, who he claims was the officer in charge because of his seniority.

Liability of a police officer for allegedly negligent acts is determined by application of the duty/risk analysis,[85] which requires that plaintiff prove all of the following five elements:

(1)   the defendant had a duty to conform his conduct to a specific standard of care;

(2)   the defendant breached his duty by failing to conform his conduct to the specified standard;

(3)   the defendant's breach was a cause-in-fact of plaintiff's injury;

(4)   the defendant's breach was a legal cause of plaintiff's injury; and

(5)   plaintiff sustained actual damages as a result of defendant's breach.[86]

Whether defendant owed a duty to plaintiff in this case is a question of law.[87] It is established law that a police officer confronting an armed subject owes a duty to act reasonably under the totality of the circumstances.[88] This duty does not require a police officer to choose the best course of action from among available alternatives but, instead, merely requires that the chosen course of conduct be reasonable under the same standard of conduct applied to an ordinary, prudent person in the same

---

[85] Mathieu v. Imperial Toy Corp., 646 So.2d 318, 321 (La. 1994).

[86] Roberts v. Benoit, 605 So.2d 1032 (La. 1991).

[87] Stroik v. Ponseti, 699 So.2d 1072, 1077 (La. 1997) (citing Mundy v. Department of Health & Human Resources, 620 So.2d 811, 813 (La. 1993) and Faucheaux v. Terrebonne Consolidated Government, 615 So.2d 289, 292 (La. 1993)).

[88] Id. citing Mathieu, 646 So.2d at 323 and Kyle v. City of New Orleans, 353 So.2d 969, 973 (La. 1977).

21

circumstance.[89]  Whether or not a police officer complied with applicable department policies is not determinative.[90]  The facts before us are that the BPD officers on the scene knew that Clem was armed and in hiding in the motel and were, thus, confronting an armed suspect.

Generally, when a public official breaches a duty which is owed to the public in general, such breach does not result in liability to an individual.[91]  Plaintiff argues that, though Captain Burrell owed a general duty to the public, such duty was transformed into a duty to him individually because of closeness in proximity or time.  We agree and find that the duty of reasonableness under the totality of the circumstances was owed by Captain Burrell to plaintiff individually.[92]  Now that a duty has been specified, we turn to the element of breach.

Whether or not Captain Burrell breached his duty to plaintiff is a question of fact.[93]  The facts before the court demonstrate that Captain Burrell's behavior at the scene was reasonable under the circumstances.  In Kyle v. City of New Orleans, the Louisiana Supreme Court instructed that, for purposes of determining breach by a police officer under the duty/risk analysis, the following factors must be considered:

> (1)    the known character of the arrestee;
> (2)    the risks and dangers faced by the officers;
> (3)    the nature of the offense involved;

---

[89]Jenkins v. Fanguy, 946 So.2d 201 (La. App. 4 Cir. 2006); Brooks v. City of Jennings, 944 So.2d 768 (La. App. 3 Cir. 2006).

[90]Jones v. Congemi, 848 So.2d 41 (La. App. 5 Cir. 2003), writ denied, 855 So.2d 354 (La. 2003).

[91]Stewart v. Schmieder, 386 So.2d 1351 (La. 1980).

[92]Taylor v. City of Shreveport, 653 So.2d 232 (La. App. 2 Cir. 1995)

[93]Stroik, 699 So.2d at 1078, citing Mundy, 620 So.2d at 813.

(4)     the chance of the arrestee's escape if the
        particular means are not employed;
(5)     the existence of alternative methods of arrest;
(6)     the physical size, strength, and weaponry of the
        officers as compared with the arrestee; and
(7)     the exigency of the moment.[94]

Plaintiff alleges that Captain Burrell breached his duty when he ordered plaintiff and his colleague, Steve Williams, to come further into the crime scene and render aid to Officer Smith and further breached his duty when he yelled for Clem, an armed suspect, to come out with his hands up while plaintiff and Williams were attempting to render aid to Officer Smith. Plaintiff asserts that these negligent acts were the cause of his injury.

The video and deposition evidence demonstrate that, upon arriving at the scene, Captain Burrell was informed by the motel manager, Mr. Patel, that at least one suspect was hiding in room 105, which is located on the first floor of the motel.[95] Captain Burrell was also aware that the suspect was armed and that two police officers were shot and in urgent need of medical attention. Under these facts, we do not find that Captain Burrell's conduct may be said to fall outside the scope of reasonable options, especially in light of the harrowing and exigent circumstances of the event in question. As the court found in Mathieu v. Imperial Toy Corporation,[96] we find that the BPD officers on the scene "had to make a quick decision under extremely charged circumstances."[97]

---

[94]353 So.2d 969 (La. 1977).

[95]DVD [R. 29-8]; Deposition of Burrell [Exhibit 4 to R. 33] at 12:22 - 13:22, 16:13 - 20.

[96]646 So.2d 318 (La. 1994).

[97]Id. at 326.

23

Police officers are not held to the standard of perfect hindsight and their chosen course of action is not required to be the best or even a better alternative, rather, the law requires only that the chosen conduct was reasonable given the totality of the circumstances.[98] The obvious danger of the armed suspect coupled with the seriousness of the injuries to fellow officers and the legitimate goal of disarming and arresting the suspect, when analyzed in light of the Kyle factors, lead us to conclude that Captain Burrell, as the senior officer in charge on the scene, acted in a manner that, while not the only alternative, did not fall outside the scope of reasonableness in this case. Plaintiff presents no authority or expert opinion evidence from which a rational trier of fact might conclude that Burrell's action fell completely outside of the scope of reasonableness in this case, other than his own opinion.

Though we are not required to proceed further with the duty/risk analysis, having determined that no breach occurred, we find that the particular facts of this case make doing so prudent.

Plaintiff asserts that Captain Burrell's conduct was the cause-in-fact of his injury, alleging that Burrell's decision to order Office Hawthorne to escort him into the scene to render aid to Officer Smith created a risk of harm to plaintiff. Plaintiff further alleges that Captain Burrell's decision to call for the suspect to come out with his hands up while plaintiff was attempting to render aid was the cause of the suspect's exit from room 105 and of the ensuing gunfight.

In the context of a negligence claim, cause in fact refers to a necessary component, without which the injury would not have occurred.[99] Accordingly, we ask if plaintiff has demonstrated that,

---

[98]Id. at 325 - 26 (internal citations omitted).

[99]Ducote v. Jackson, 542 So.2d 689, 690 (La. App. 4 Cir. 1989) (citing Schiro v. Travelers Insurance Company, 489 So.2d 315 (La. App. 4 Cir. 1986).

24

but for Captain Burrell's alleged substandard conduct, would plaintiff have incurred his injury.[100] We find that plaintiff fails to make such a showing. As discussed above, plaintiff was free at all times to refuse to enter the scene to render aid until such time as he felt the scene was safe or secure in whatever manner he deemed required. Plaintiff admits that, because of the severity of the injuries to both wounded officers, delay in rendering aid was undesirable.[101] Moreover, plaintiff fails to demonstrate that, had BPD officers not yelled for Clem to come out with his hands up, plaintiff would not have been injured. As argued by defendant, it is plausible that Clem would have exited the motel room peacefully and surrendered himself to police custody, realizing that he was surrounded. Alternatively, it is possible that, without prompts from BPD, Clem would have elected to exit the room armed and a gunfight would still have ensued. For these reasons, we conclude that plaintiff fails to carry his burden of proof as to the but-for causation element.

We next examine the element of legal causation, which requires plaintiff to demonstrate that the particular risk falls within the scope of the duty owed by defendant. The answer to this question is a matter of law and requires to court to consider policy issues.

Defendants assert that the professional rescuer doctrine applies to bar a finding of legal causation and of liability as a whole in this case. The professional rescuer doctrine, sometimes referred to as the "fireman's rule," states that a professional rescuer who is injured in the performance of his duties assumes the risk of such injury and is not entitled to damages.[102] Damages may be

---

[100]Id.

[101]R. 39-1 at p. 6.

[102]Gann v. Matthews, 873 So.2d 701, 705 (La. App. 1 Cir. 2004) (citing Mullins v. State Farm Fire and Cas. Co., 697 So.2d 750 (La. App. 1 Cir. 1997)).

awarded to a professional rescuer, however, when the risk of injury was independent of the rescuer's duty or when the conduct of the defendant is so blameworthy that tort liability should be imposed as a punishment or deterrence.[103]  This second exception is sometimes referred to as the "gross negligence exception."[104]

Plaintiff argues, first, that although Louisiana has extended the fireman's rule to physicians,[105] it has not expressly extended it to emergency medical personnel. Plaintiff also argues that the gross negligence exception to the rule applies, enabling plaintiff to pursue his claims.

Our review of the Louisiana jurisprudence concerning application of the fireman's rule confirms that Louisiana courts have yet to consider the issue of the rule's applicability to emergency medical personnel specifically.[106]  Cases such as <u>Gonzales v. Kissner</u>[107] reveal that it is possible that professions other than police and firemen may fall within the ambit of "professional rescuer" for purposes of the rule.  These cases make it clear, however, that application of the fireman's rule involves several questions.  First, we must consider whether or not plaintiff's injury arose from a dependent risk (one which stems from the very emergency that the rescuer was hired to remedy) or an independent risk (one which would pose a danger to the rescuer even in the absence of the

---

[103]<u>Id.</u>

[104]<u>Meunier v. Pizzo</u>, 696 So.2d 610, 613 (La. App. 4 Cir. 1997) (internal citations omitted).

[105]R. 39-1 at p. 9, citing <u>Carter v. Taylor Diving & Salvage</u>, 341 F. Supp. 628 (E.D. La. 1972), <u>aff'd</u>, 470 F.2d 995 (5th Cir. 1973).

[106]<u>Henry v. Barlow</u>, 901 So.2d 1207 (La. App. 3 Cir. 2005); <u>Mullins v. State Farm Fire and Cas. Co.</u>, 697 So.2d 750 (La. App. 1 Cir. 1997);

[107]24 So.3d 214 (La. App. 1 Cir. 2009).

emergency to which he responded).[108]

In this case, plaintiff is a paramedic who, as argued by plaintiff, is responsible for rendering aid to and transporting patients.  Given that EMS personnel generally respond to the scene of accidents in order to treat and transport patients, we find that plaintiff's arrival on the scene of the shooting at issue in this case and his attempt to render aid to Officer Smith was a dependent risk which means that we consider it to be the exact emergency that the plaintiff was hired to respond to.  As we have already determined, the decision of when to enter the scene was plaintiff's to make and, once made, should not be imputed to another.  We have also already found that plaintiff fails to demonstrate gross negligence by Captain Burrell, offering nothing other than his own conclusory opinions in support of his claims.  Although we agree that placing himself in the middle of a police stand-off with an armed gunman is not within the scope of a paramedic's basic duties to treat and transport patients, plaintiff armed himself with a pistol and, disregarding his duty to make an independent assessment of the situation for his own benefit and that of his subordinate paramedics, entered the scene.  Given his affirmative acceptance of this risk, we believe that defendant has successfully demonstrated that a Louisiana court would apply the fireman's rule in this case, barring recovery for plaintiff's injuries.  Also, we note that plaintiff's argument against the application of the fireman's rule, that he is a paramedic who does not share the obligations of a police officer or fireman, stands in contrast to his earlier arguments in favor of constitutional claims in that these earlier arguments asked the court to find that he was under the direction and control of the police.  As above, we reject these arguments.  Accordingly, we find that plaintiff has failed to carry his burden

---

[108]Id. citing Worley v. Winston, 550 So.2d 694, 697 (La. App. 2 Cir. 1989), writ denied, 551 So.2d 1342 (La. 1989).

27

of proof with respect to the legal causation element.

Finally, we note that neither party disputes plaintiff's injury in this case.  Plaintiff has adequately demonstrated damages for purposes of this motion.

Plaintiff's motion for partial summary judgment as to his state law negligence claims must be denied, given our findings that he fails to demonstrate the elements of breach and causation.  On the other hand, we find that defendant's motion for summary judgment as to these claims should be granted, because defendant has demonstrated an absence of evidence in support thereof, which plaintiff has not remedied, though he is obligated to do so if he can.

## III.   CONCLUSION

Given our reasoning above, the court finds that defendant's motion for summary judgment should be granted in that the court agrees that plaintiff fails to offer evidence in support of his claims of unlawful seizure and denial of due process under the Federal and Louisiana Constitutions.  Instead, we find that the evidence unwaveringly supports the view that plaintiff acted voluntarily and had a duty to assess the safety of the scene, which was very obviously dangerous.  Moreover, we find that plaintiff fails to demonstrate the existence of a pattern of conduct or official policy of insufficient training which led to his injury such that a rational trier of fact could make a finding of municipal liability for these constitutional claims under 42 U.S.C. § 1983.

The court also finds that plaintiff has failed to offer evidence in support of his Louisiana law negligence claims.  Specifically, we find that plaintiff fails to demonstrate evidence of Captain Burrell's breach of his duty of reasonableness in this case and, similarly, of both but-for and legal causation.

For these reasons, we find that summary judgment as to all claims in favor of defendant is

28

appropriate at this time and plaintiff's motion for partial summary judgment as to these claims should be denied.  Although, as stated above, our analysis of plaintiff's negligence claims does require findings of fact, plaintiff offers no evidence, expert or otherwise, and cites scare if any authority in support of his claims.  Moreover, plaintiff points to no evidence which, if allowed to proceed to the bench trial of this matter, currently set for May 3, 2010, he would produce in support of these claims. Thus, plaintiff has clearly not met his burden as a summary judgment respondent and we find that summary judgment is the appropriate remedy at this stage.

The court will issue a judgment of dismissal in conformity with these findings.


Alexandria, Louisiana
March 29, 2010

_____
JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE

29